UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERRY LEE ENGEL, et al. | * | CIVIL ACTION |
| | * | NO. 06-10447 |
| VERSUS | * | (c/w 06-10547, 07-116) |
| | * | |
| WILSON B. SEXTON, et al. | * | SECTION "N" |
| | * | JUDGE ENGELHARDT |
| a/k/a | * | |
| "IN RE POOL CORPORATION | * | |
| SHAREHOLDER DERIVATIVE LITIGATION" | * | MAGISTRATE 5 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# O R D E R  and  R E A S O N S

Before the Court is the **Motion to Dismiss the Consolidated Complaint (Rec. Doc. 94)**

filed by the nominal Defendant, Pool Corporation ("PoolCorp"), and individual Defendants

Wilson B. Sexton, John M. Murphy, Stephen C. Nelson, Richard P. Polizzotto, Christopher W.

Wilson, Craig K. Hubbard, Donald L. Meyer, Frank J. St. Romain, Andrew W. Code, James J.

Gaffney, John E. Stokely, Robert C. Sledd, Manuel J. Perez de la Mesa, and A. David Cook

("Individual Defendants"). Defendants claim that the Amended Consolidated Complaint

("Amended Complaint") must be dismissed because (1) pre-suit demand is not excused under

Delaware law,[1] (2) Plaintiffs have failed to state claims under the federal Securities Exchange Act of 1934 ("Securities Act") and Delaware law, and (3) both the federal and state claims are time-barred.[2] The motion is opposed. After reviewing the Amended Complaint, the memoranda of the parties, and the applicable law, the Court rules that motion is hereby **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

In this corporate shareholder derivative action, nominal Plaintiffs Jerry Lee Engel, Sheryl Meyers, and Charles Barbarisi ("Plaintiffs"), who were shareholders of nominal Defendant PoolCorp at all times relevant,[3] allege a scheme of backdating stock options by the Individual Defendants, who were directors and officers of PoolCorp, and seek accounting and rescission of profits improperly obtained by the Individual Defendants. Plaintiffs also seek revision of PoolCorp's financial statements from the relevant years to reflect compensation losses to the corporation resulting from the allegedly backdated option grants.

---

[1] Delaware law applies because PoolCorp is incorporated there. *Kamen v. Kemper Financial Servs., Inc.*, 500 U.S. 90, 108-09 (1991) (noting that a federal court entertaining a derivative action must apply the demand futility exception of the state of incorporation).

[2] Plaintiffs also brought a claim under §304 of the Sarbanes-Oxley Act of 2002 for disgorgement against the chief executive officer and chief financial officer of PoolCorp. Defendants argue that there is no right of private action under §304 and Plaintiffs do not address the issue in their opposition. Accordingly, to this extent, the motion is granted.

[3] Unless otherwise noted, all recited  facts are derived from the allegations of the Amended Complaint (Rec. Doc. 48).

**A. The Defendants**

Before laying out the facts as alleged in the Amended Complaint, the Court finds it useful to draw some distinctions between the Defendants. The nominal Defendant is Pool Corporation, a Delaware corporation with its principal place of business in Covington, Louisiana. PoolCorp is the world's largest wholesale distributor of swimming pool supplies, equipment, and related leisure products. It operates hundreds of customer service centers in North America and Europe. Also named as Defendants, and known collectively as the 14 "Individual Defendants," are:

(1) Wilson B. Sexton ("Sexton"), formerly chief executive officer of PoolCorp and presently chairman of the board;

(2) Manuel J. Perez de la Mesa ("Perez de la Mesa"), formerly chief executive officer and presently president of PoolCorp, as well as a director;

(3) Frank J. St. Romain ("St. Romain"), formerly president and chief executive officer of PoolCorp, and presently a director;

(4) Richard P. Polizzotto ("Polizzotto"), vice president of PoolCorp;

(5) A. David Cook ("Cook"), vice president of PoolCorp;

(6) John M. Murphy ("Murphy"), vice president of PoolCorp;

(7) Christopher W. Wilson ("Wilson"), vice president and general manager of PoolCorp;

(8) Stephen C. Nelson ("Nelson"), vice president and general manager of PoolCorp;

(9) Craig K. Hubbard ("Hubbard"), formerly chief financial officer and presently treasurer and assistant secretary of PoolCorp;

(10) Donald L. Meyer ("Meyer"), corporate controller and assistant treasurer of

PoolCorp;

(11) Andrew W. Code ("Code"), director of PoolCorp and chairman of the board's compensation committee and formerly a member of the stock option subcommittee; and

(12) Robert C. Sledd ("Sledd"), director of PoolCorp and member of the board's compensation and audit committees and formerly a member of the stock option subcommittee.

Because Plaintiffs allege that each of the above Individual Defendants received backdated stock options, these 12 persons are known collectively as the "Option Recipient Defendants." Also named as Individual Defendants are:

(13) John E. Stokely ("Stokely"), director of PoolCorp and chairman of the board's audit committee, and

(14) James J. Gaffney ("Gaffney"), director of PoolCorp, member of the board's audit committee, and one-time member of the compensation committee.

These last two Individual Defendants did not receive backdated stock options, and along with Sexton, Perez de la Mesa, Code, and Sledd, are known collectively as the "Director Defendants."

**B. Factual and Procedural History**

At all times relevant, PoolCorp's board delegated the responsibility for reviewing the salaries and benefits of company executives and key employees to its compensation committee. As part of that task, the compensation committee also administered PoolCorp's stock-based incentive program. In 2001, the board also established a subcommittee of the compensation

4

committee to administer the stock option program. That subcommittee was dissolved in 2003 and responsibility for the stock option program reverted to the compensation committee at that time.

Pursuant to PoolCorp's "Stock Option Plan," issued in 1995 and revised in 1998, the exercise price of stock options granted to directors and officers could not be less than 100 percent of the fair market value of a share of common stock on the date the option was granted, or less than 110 percent of fair market value as of the grant date if the recipient owned more than 10 percent of PoolCorp's voting stock. Plaintiffs allege that from 1996 to 2002, the compensation committee and/or the subcommittee deliberately violated the Stock Option Plan, Internal Revenue Code provisions, Securities and Exchange Commission ("SEC") rules, and Generally Accepted Accounting Principles by granting backdated stock options that fell at or near historic annual lows in PoolCorp's stock price. Specifically, Plaintiffs point to nine option grants whose "measurement dates" were allegedly adjusted to fall on dates when PoolCorp's stock price was lower than the fair market value on the actual grant date of the option grant. The adjusted numbers of options granted, recipients, and adjusted exercise prices are shown in the following table.[4]

---

[4] All numbers are adjusted for stock splits, and are approximate because in many cases the precise number of options granted cannot be determined from PoolCorp's public filings. This information is drawn from the charts, tables, and text contained in ¶¶43-59 of the Amended Complaint.

| DATE OF GRANT | RECIPIENTS | OPTIONS GRANTED[5] | EXERCISE PRICE |
|---|---|---|---|
| January 24, 1996 | Sexton<br>St. Romain<br>Polizzotto<br>Hubbard | 15,000<br>15,000<br>15,000<br>at least 3,007 | $0.987 |
| March 25, 1996 | Code<br>Sledd | at least 18,975<br>at least 28,497 | $1.15 |
| January 14, 1997 | St. Romain<br>Sexton<br>Cook<br>Murphy<br>Polizzotto<br>Hubbard | 171,286<br>171,286<br>34,257<br>39,966<br>28,547<br>at least 34,165 | $1.73 |
| February 9, 1998 | St. Romain<br>Sexton<br>Cook<br>Murphy<br>Polizzotto<br>Hubbard | 113,764<br>113,764<br>26,544<br>37,291<br>26,544<br>at least 30,372 | $2.67 |
| February 25, 1999 | Sexton<br>St. Romain<br>Perez de la Mesa<br>Cook<br>Murphy<br>Polizzotto<br>Hubbard<br>Wilson<br>Nelson | 152,045<br>76,022<br>253,409<br>50,681<br>50,681<br>30,409<br>at least 30,373<br>at least 22,776<br>at least 19,233 | $2.64 |
| May 13, 1999 | St. Romain | 28,450 | $3.46 |
| February 16, 2000 | Sexton<br>Perez de la Mesa<br>Cook<br>Murphy<br>Polizzotto<br>Wilson | 151,828<br>253,047<br>63,261<br>63,261<br>37,957<br>at least 25,311 | $4.84 |

---

[5] The numbers of options is adjusted based on the assumption that no options were exercised prior to PoolCorp's six 3-for-2 stock splits. The number of options granted for grants that occurred after these splits are adjusted to account for the 3-for-2 splits. Exercise prices are also adjusted to account for these splits.

| | | | |
|---|---|---|---|
| March 21, 2001[6] | Sexton<br>Perez de la Mesa<br>Cook<br>Murphy<br>Polizzotto<br>Hubbard<br>Nelson<br>Wilson<br>Meyer | 101,275<br>253,189<br>40,510<br>40,510<br>24,306<br>at least 24,299<br>at least 16,199<br>at least 16,999<br>at least 10,123 | $8.74 |
| February 7, 2002[7] | Perez de la Mesa<br>Cook<br>Murphy<br>Polizzotto<br>Wilson<br>Sexton<br>Hubbard<br>Meyer<br>Nelson | 90,000<br>33,750<br>33,750<br>27,000<br>13,500<br>at least 34,530<br>at least 20,250<br>at least 6,750<br>at least 13,500 | $12.36 |

For each grant, Plaintiffs allege that the price of PoolCorp's stock rose substantially in the 30 days after the backdated measurement date, as well as in the 12 months following the backdated measurement date. The Option Recipient Defendants received these option grants and, Plaintiffs allege, realized improper profits when those options were later exercised at advantageous prices.[8]

Proxy statements that PoolCorp filed every year with the SEC for the years 1997-2003 reported that the exercise price of options granted that year were equal to the fair market value of the stock on the measurement date. The company's Form 10-Ks for the years 1996-2005 (signed by various executives and board members) also certified that PoolCorp's stock option program

---

[6] Later amended to reflect a measurement date of February 21, 2001, at an exercise price of $9.83.

[7] Later amended to reflect a measurement date of February 13, 2002, at an exercise price of $12.96.

[8] In total, the Option Recipient Defendants sold shares valued at $24,191,709.41 during the relevant period, some portion of which was allegedly realized through the exercise of improperly backdated options.

complied with SEC regulations prohibiting backdating. Specifically, the Form 10-Ks certified that PoolCorp was in compliance with Accounting Principles Board Opinion No. 25 ("APB 25"), "Accounting for Stock Issued to Employees." APB 25 recognized two kinds of options. If the option had an exercise price lower than the fair market value of the stock as of the "measurement date," the company was required to state a compensation expense for the option equal to the difference between fair market value as of the grant date and the exercise price. APB 25 at ¶¶12-14. Such grants are referred to as "in-the-money." If the grant's exercise price was equal to the fair market value of stock on the measurement date, the company would not have to state a compensation expense. Such grants are referred to as "at-the-money." Critical to this rule is the option's "measurement date." This term refers to the date on which the fair market value of an option is determined. The measurement date is the first date on which are known both (1) the number of options that an individual employee is entitled to receive, and (2) the option or purchase price. APB 25 at ¶10(b).

On August 9, 2006, PoolCorp announced that it had undertaken a review of its stock option practices and had identified

> certain issues with its historical option granting process, including instances in
> which the grant dates and exercise prices approved by the Compensation
> Committee for certain annual option grants differed from the grant dates and
> option exercise prices set forth in the respective stock option agreements for such
> grants.

Amended Complaint at ¶64. The company agreed to "modify these stock option agreements to reflect the proper grant dates and exercise prices." *Id.* However, PoolCorp asserted that the issues had "no material impact on [PoolCorp's] prior period financial statements." *Id.* The next day, Option Recipient Defendants who had received options in 2001 and 2002–among them

board members Sexton and Perez de la Mesa–filed revised Form 3s, 4s, and/or 5s with the SEC to amend the grant date of options granted in those years. However, PoolCorp took no action to recover any profits improperly realized or to restate its financial statements. Nor has the company revealed the facts or methodology it relied upon in undertaking its review of its option granting process.

Specifically, the approximately 527,400 options granted on March 21, 2001, at $8.74 an option–among the lowest closing prices of the year–were amended to reflect a measurement date of February 21, 2001, at an exercise price of $9.83, which by the Court's calculation suggests that improper profits of more than half a million dollars were realized by the incorrect measurement date. Similarly, the approximately 273,000 options granted on February 7, 2002, at $12.36 an option, were amended to reflect a measurement date of February 13, 2002, at an exercise price of $12.96 per option, which by the Court's calculation suggests that improper profits of more than $160,000 were realized by the incorrect measurement date. PoolCorp did not amend the option grant dates of option grants in the years 1996-2000.

Case No. 06-10447 was filed on November 17, 2006. The cases were consolidated by order of this Court on January 26, 2007, and the Amended Complaint was filed on June 4, 2007. The Amended Complaint alleges violations of various provision of the Securities and Exchange Act, state law claims for breach of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, constructive fraud, and corporate waste, rescission, and accounting. A motion to dismiss was filed on July 19, 2007, and set for argument before Judge G. Thomas Porteous of the Eastern District of Louisiana, but that motion was administratively terminated on March 3, 2008. The case was transferred to the undersigned on March 10, 2008, and the instant motion

was filed on June 10, 2008. Plaintiffs filed their opposition on July 16, 2008, and the Court granted Defendants leave to respond on July 20, 2008.

## II. ANALYSIS

### A. Demand Futility

Defendants claim that the Amended Complaint must be dismissed because Plaintiffs failed to make pre-suit demand on the board of PoolCorp. The Court disagrees.

In a stockholder derivative suit, a stockholder asserts a cause of action belonging to the corporation. *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984). Because directors are empowered to manage, or direct the management of, the business and affairs of the corporation, *see* 8 DEL.C. §141(a), the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation. *Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991). In the latter scenario, stockholders often file suit directly, claiming that demand is excused because it would be futile. *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993).

The entire question of demand futility is inextricably bound to issues of business judgment and the presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the best interests of the company. *See Aronson*, 473 A.2d at 812; *Kaplan v. Centex Corp.*, 284 A.2d 119, 124 (Del. Ch. 1971). Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts rebutting the business judgment presumption, *see*

*Puma v. Marriott*, 283 A.2d 693, 695 (Del. Ch. 1971), and plaintiffs must plead "with particularity" why a demand on the board would be futile. FED. R. CIV. P. 23.1; DEL. CH. R. 23.1; *see also Brehm v. Eisner*, 746 A.2d 244, 255 (Del. Ch. 2000) (noting that this heightened pleading requirement is designed to prevent shareholders from "caus[ing] the corporation to expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculation").

In *Aronson*, the Delaware Supreme Court promulgated the two part "*Aronson* test," which renders pre-suit demand futile and excused where, "under the particularized facts alleged, a reasonable doubt is created that (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814-15. If either prong is satisfied with respect to half or more of the board members at the time the complaint was filed, demand is excused. *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000).

In *Rales*, the Delaware Supreme Court held that the *Aronson* test should not be applied where the board on which demand would be made did not make the business decision challenged in the litigation. This situation generally arises in three ways: (1) where a majority of the directors who made the decision has since been replaced; (2) where the claim at issue does not arise from a business decision of the board; and (3) when a board of a different company made the challenged business decision. In those situations, demand is excused if the well pleaded allegations of the complaint give rise to a reasonable doubt that the board can exercise "its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 933-34. The requisite doubt necessary to find a director interested under *Rales* may be raised by

well pleaded facts demonstrating that the director will be exposed to liability as a result of the derivative claim. This potential threat of liability must rise to a substantial likelihood in order to satisfy *Rales*. *Id.* at 936. In this case, *Rales* provides the proper standard since the challenged decisions (the backdated option grants) were not made by the board but rather by the compensation committee or, in 2001-03, the stock option subcommittee.[9]

In a recent decision applying *Rales* to a case alleging option backdating, the Delaware Chancery Court noted certain factors "that undermine the court's confidence in the ability of the board to properly consider a demand." *Conrad v. Blank*, 940 A.2d 28, 37 (Del. Ch. 2007). In *Conrad*, the compensation committee of a major office supplies retailer granted stock options to directors and key officers. After an internal review, the company determined that the options had been granted with "incorrect measurement dates." The company offered no explanation of how those dates were not the result of backdating, did not release the methodology of its review, did not restate its financial statements, and did not make demand upon the directors and officers who had received the options to repay any improperly realized profits. *Id.* at 37-38. The company and its audit committee joined with the individual directors and officers in seeking to dismiss the complaint despite there being "no suggestion that either the company or the members of the audit committee were unaware that the company had potential claims for relief, such as those asserted in this complaint, when they conducted their 'review.'" *Id.* at 37. In holding demand excused, the Delaware court concluded, "In these circumstances, it would be odd if Delaware law required a

---

[9] There is no doubt that this delegation was valid. 8 DEL. C. §141(c) provides that the board of directors may designate committees and "[a]ny such committee . . . shall have and may exercise all powers and authority of the board of directors in the management of the business and affairs of the corporation."

stockholder to make demand on the board of directors before suing on those very same theories of recovery." *Id.* at 38.

This Court is faced with very similar facts in this case and reaches the same conclusion as to demand futility. At the time Plaintiffs filed the instant suits, the board of PoolCorp consisted of eight directors: Sexton, Perez de la Mesa, Code, Gaffney, Sledd, and Stokely, as well as two other directors not named as defendants. Two of the directors–Sexton and Perez de la Mesa–filed amended forms restating the measurement date of option grants they received in 2001 and 2002, and as such have admitted that they received profits in excess of those authorized by the Stock Option Plan. Thus, there is obviously reasonable doubt as to these directors' independent and disinterested business judgment. *See id.* at 38 (directors who received allegedly backdated options not disinterested); *Weiss v. Swanson*, 948 A.2d 433, 449-50 (Del. Ch. 2008) (same); *Ryan v. Gifford*, 918 A.2d 341, 354 (Del. Ch. 2007) (same); *In re Maxim Integrated Prods., Inc., Deriv. Litig.*, 574 F. Supp. 2d 1046, 1060 (N.D. Cal. 2008) (same, applying Delaware law); *In re Cirrus Logic, Inc.*, 2008 WL 4065925 (W.D. Tex. August 28, 2008) (same, applying Delaware law).

The analysis is scarcely different as to directors Code and Sledd, both of whom served on the compensation committee or the stock option subcommittee when the 2001 and 2002 option grants were approved. Both these directors signed Form 10-K filings in 2001 and 2002 certifying PoolCorp's compliance with APB 25. Sledd also served as the chairman of the audit committee, which conducted the review that uncovered the "issues" regarding the option grants, but made no demand for repayment of profits realized through backdated options. The terms of the Stock Option Plan gave no discretion to compensation committee members to approve exercise prices

for option grants that were less than 100 percent of fair market value on the measurement date. This fact makes it less likely than in other cases where such discretion was granted that the committee members unknowingly or innocently approved option grants with incorrect measurement dates. *See Conrad*, 940 A.2d at 39 (committee members who approved backdated options not disinterested); *Ryan*, 918 A.2d at 353 (same). Plaintiffs have thus raised a reasonable doubt as to the disinterested and independent business judgment of four of the eight members of the board, and pre-suit demand is excused as to the 2001 and 2002 option grants.

The analysis is somewhat different as to the 1996-2000 option grants that were allegedly backdated, though the Court reaches the same conclusion. PoolCorp has not made any admissions regarding option grants other than the 2001 and 2002 grants. However, in *Conrad*, the Delaware Chancery Court noted that "a finding of a pattern or practice of assigning improper measurement dates to option grants resulting in the issuance of millions of stock options with strike prices set at a lower price than that required by the plan raises substantial risks of personal liability on the part of both the grant executives who got the options and the directors who approved them," thus excusing pre-suit demand. *Conrad*, 940 A.2d at 38 n.22.

The Court finds that Plaintiffs have adequately pleaded such a pattern or practice. Specifically, PoolCorp has admitted, in two instances, to setting incorrect measurement dates of options grants. In both cases, the stock price on the reported measurement date was below the price on the amended measurement date, and in one year, 2001, was near the historic low stock price for that year. In both cases, the stock made substantial gains over the next 30 days and 12 months. While Plaintiffs have not offered a statistical analysis of the 1996-2000 grants of the kind that some courts have required to demonstrate adequately pleaded allegations of backdating

14

as regards the 1996-2000 option grants, Plaintiffs have shown that those other option grants fit the pattern of the 2001 and 2002 grants: that is, an option grant at or near an historic low stock price with a subsequent increase in price over the next 30 days and 12 months. Given PoolCorp's admission of "issues" in its option grant program and amendment of the measurement date of two option grants, the Court concludes that Plaintiffs have adequately pleaded a pattern or practice of backdating that raises substantial risks of personal liability on the part of directors who received those allegedly backdated options. Because four of the eight directors upon whom demand would have been made are Option Recipient Defendants in the years 1996-2000 (Sexton, Perez de la Mesa, Code, and Sledd) and two (Code and Sledd) served on the compensation committee during the relevant time period, the Court concludes that the *Rales* test is met and pre-suit demand is excused as to the allegedly backdated option grants in the years 1996-2000.

Defendants cite to *In re CNET Networks, Inc. Shareholder Deriv. Litig*., 483 F. Supp. 2d 947 (N.D. Cal. 2007), and its progeny to argue that Plaintiffs have not pleaded intentional wrongdoing by any director with the requisite particularity, and that as such pre-suit demand is not excused. The Court notes that none of the cases cited for this proposition are Delaware cases, and further notes that *CNET Networks* has been criticized by the Delaware Chancery Court. *See Conrad*, 940 A.2d at 38 n.22. Further, *CNET Networks* is distinguishable in one important and particularly relevant way. After concluding that the company had used incorrect measurement dates, the CNET board restated its financial statements, admitted that it used a measurement date at odds with APB 25, revealed the evidence upon which it relied in calculating new measurement dates, took a compensation loss for the relevant years, and entered into agreements with directors

and officers who had received improperly dated option grants to pay back the improperly realized profits. This openness contrasts markedly with the instant case, where PoolCorp has neither restated its financial statements nor sought repayment of profits improperly realized, even despite admitting that it has made option grants with improper measurement dates. Given the cursory investigation PoolCorp conducted into option grants it *admits* were incorrectly dated, the Court is hard-pressed to accept that its investigation into option grants that it *denies* were incorrectly dated would be any less cursory.

Finally, PoolCorp argues that its directors are protected from liability for any breach of fiduciary duty, except those breaches involving disloyalty, self-dealing, bad faith, or knowing violations of the law, by an exculpatory provision of PoolCorp's charter. *See* Mot. at Ex. C (Restated Certificate of Incorporation, Article 7). PoolCorp argues that Plaintiffs have not plead any such breach with particularity, such that it is substantially likely that the Individual Defendants face a threat of liability. Thus, Defendants argue, pre-suit demand is not excused. However, as noted above, the Court has concluded that Plaintiffs have adequately pleaded allegations of bad faith and disloyalty, in that a majority of the board knowingly approved and/or received improperly dated option grants. *See Ryan*, 918 A.2d at 355 ("[I]t is difficult to conceive of a context in which a director may simultaneously lie to his shareholders (regarding his violations of a shareholder-approved plan, no less) and yet satisfy his duty of loyalty."). Plaintiffs will be put to their proof on these allegations, but they are adequately pleaded such that the motion to dismiss for failure to make pre-suit demand must be denied.

**B. Motion to Dismiss for Failure to State a Claim**

A district court cannot dismiss a complaint, or any part of it, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowry v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997). "However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . .'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)) (alteration in original). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1994)). Moreover, "'legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Blackburn*, 42 F.3d at 931 (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotation and citation omitted).

## 1. Securities and Exchange Act Claims

Plaintiffs bring claims (1) against the Individual Defendants for violations of §10(b) of the Securities Act, as well as SEC Rule 10b-5; (2) against the Individual Defendants for violations of §14(a) of the Securities Act; and (3) against Sexton, Perez de la Mesa, St. Romain, Hubbard, and the Director Defendants for violation of §20(a) of the Securities Act. Defendants claim that Plaintiffs have not adequately pleaded scienter as to any of these federal law claims with the particularity required under the Private Securities Litigation Reform Act ("PSLRA"), and also argue that at least some of the claims are barred by the statute of repose.

### a. Scienter as to §10(b) and Rule 10b-5

Section 10(b) of the Securities Act makes it unlawful to

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U. S. C. §78j(b). Rule 10b-5, the implementing regulation, describes what constitutes a manipulative or deceptive device. 17 C.F.R. §240.10b-5. Scienter is an element of both provisions. *See Fin. Acquisition Partners, L.P. v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). Plaintiffs may establish scienter by demonstrating either intent or severe recklessness. *Id.* at 287.

The PSLRA enhanced the particularity requirement for pleadings alleging violations of the Securities Act. In such a case, plaintiffs must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. §78u-4(b)(1)(B). For "each act or omission alleged" to be false or misleading, plaintiffs must also "state with particularity facts giving rise to a strong inference that the defendant acted with

the required state of mind." *Id.* at §78u-4(b)(2).

The Fifth Circuit has established a three-step approach to reviewing scienter allegations on a motion to dismiss a securities fraud case under PSLRA. *See Indiana Elec. Workers' Pension Fund IBEW v. Shaw Group*, 537 F.3d 527, 533 (5th Cir. 2008). First, the allegations must be taken as true. Second, courts may consider documents incorporated in the complaint by reference and matters subject to judicial notice. The facts must be evaluated collectively, not in isolation, to determine whether a strong inference of scienter has been pled. Third, a court must take into account plausible inferences opposing as well as supporting a strong inference of scienter. The inference of scienter must ultimately be "cogent and compelling," not merely "reasonable" or "permissible." *Id.* "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ---, 127 S.Ct. 2499, 2510 (2007).

Although circumstantial evidence can support a strong inference of scienter, *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002), allegations of motive and opportunity, standing alone, will not suffice. *Indiana Elec. Workers' Pension Fund*, 537 F.3d at 533. Appropriate motive and opportunity allegations may, however, "meaningfully enhance the strength of the inference of scienter." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 368 (5th Cir. 2004). In determining whether scienter has been adequately pleaded, a court looks to the state of mind of the individual corporate official or officials "who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of

all the corporation's officers and employees acquired in the course of their employment." *Id.* at 366.

In this particular case, Plaintiffs have alleged a scheme of backdating and brought a claim under §10(b) and Rule 10b-5 against the Individual Defendants. They allege that the Individual Defendants, as directors and key officers, knew of or controlled the conduct complained of, or acted with reckless disregard of the truth in that they failed to ascertain the true facts. Amended Complaint at ¶¶114-15. This Court has concluded that Plaintiffs have adequately pleaded a pattern or practice of backdating stock options granted to directors and key officers. *See supra* at §II(A). However, Plaintiffs have not alleged with the particularity required by PSLRA that *all* the Individual Defendants participated in the *granting* of options. Indeed, Plaintiffs could not do so, since they have alleged that it was the compensation committee, or the stock option subcommittee, that approved the allegedly backdated stock options and had discretionary authority to do so delegated to it by the board.

Instead, Plaintiffs argue that either receiving a backdated option grant or being a director or key executive of a company that granted backdated options serve to satisfy the scienter requirement. The latter component of this assertion is easily dismissed, however, since the Fifth Circuit has explicitly held that merely being a director or key executive of a company that issues inaccurate financial statements or violates Generally Accepted Accounting Principles is not enough, under the PSLRA, to adequately plead scienter for a violation of the Securities Act. *See Abrams*, 292 F.3d at 431-34. The Fifth Circuit has never addressed whether adequately pleading that directors and officers have *received* backdated stock options satisfies the PSLRA for purposes of alleging scienter with regard to violations of §10(b) and Rule 10b-5. District courts

have split on the question. *See In re Openwave Systems Securities Litig.*, 528 F. Supp. 2d 236, 249-50 (S.D.N.Y. 2007) (concluding that receipt of backdated stock options satisfies the scienter requirement); *but see In re Affiliated Computer Services Derivative Litig.*, 540 F. Supp. 2d 695, 702 (N.D. Tex. 2007) (concluding that mere receipt of backdated grants does not establish the requisite scienter). Nonetheless, given the stringency with which the Fifth Circuit has policed the particularity requirement in other securities fraud contexts, *see Abrams*, *supra*, and the clear intent of the PSLRA to raise the pleading bar in securities cases, the Court concludes that mere receipt of a backdated option, without more, does not adequately plead scienter for purposes of a violation of the Securities Act.

However, taking the Amended Complaint and other documents attached to it and incorporated by reference into it, the Court finds that Plaintiffs have adequately alleged scienter, with the particularity required to satisfy the PSLRA, as to compensation committee or stock option subcommittee members who approved allegedly backdated option grants. At present, it appears that only two Individual Defendants fit this category: Code (member of the compensation committee since at least 1996 and member of the stock option subcommittee in 2001-03) and Sledd (member of the compensation committee since 1997 and member of the stock option subcommittee in 2001-03). Plaintiffs have alleged that decisions about stock options were delegated to the compensation committee or, for a period of time, the stock option subcommittee, and that all decisions about option grants were made by these committees. The PoolCorp Stock Option Plan required that the exercise price of the options not be less than the fair market value of a share of PoolCorp common stock on the date of the grant. Further, PoolCorp was required to report compensation expenses pursuant to the option grant

measurement date requirements of APB 25, and the Plaintiffs have alleged that members of the compensation committee participated in preparing and signing Form 10-Ks confirming that the option grants PoolCorp made conformed to APB 25. Accordingly, the members of the compensation committee had a duty to monitor the exercise dates of option grants that they themselves approved. The failure to adequately monitor the date of the option grants to ensure conformity with APB 25 was at the least severely reckless. Taken together, these allegations are sufficiently particularized to satisfy the PSLRA as to the scienter of members of the compensation committee or stock option subcommittee. *See Maxim Integrated Prods.*, 574 F. Supp. 2d at 1062-64 (scienter adequately plead as to members of compensation committee who approved backdated option grants).

As previously stated, merely pleading that a defendant was a director or officer of a corporation that violates securities laws is not enough to satisfy the particularity requirement of the PSLRA for purposes of adequately pleading scienter. *See Indiana Elec. Workers' Pension Funds*, 537 F.3d at 535 ("[T]his court's caselaw makes clear that 'pleading[s] of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions with the company.'") (citing *Abrams*, 292 F.3d at 432); *see also Blackwell*, 440 F.3d at 287 ("Corporate officers are not liable for acts solely because they are officers, even where their day-to-day involvement in the corporation is pleaded."); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 424-25 (5th Cir. 2001) ("We recognize that normally an officer's position with a company does not suffice to create an inference of scienter."). But the Court's holding does not rest merely upon any Individual Defendant's membership on a committee. The cited cases are distinguishable, in that they concern statements (ranging from press releases to corporate filings

made to the SEC to an executive's public boast about his hands-on management style) that were made or issued by a key executive, board, or committee of a board, with no allegation that the person or persons who made the statement had actually conducted the analysis that supported them.

Here, it is alleged that the members of the compensation committee did much more than merely sit on a board and put its stamp to someone else's analysis. It is alleged that they approved the grant of stock options, named the recipients, and it is reasonable to presume, the numbers of options granted. They knew the actual dates of issue and, it is reasonable to deduce from these facts, knew or were reckless as to the possibility that these option grants were incorrectly dated. Taken together, these "known or assumed facts or statements," *Tellabs*, 127 S.Ct. at 2510, support a strong inference of scienter as to the members of the compensation committee. As the Delaware Chancery Court succinctly put the matter in *Ryan*, "[I]t is difficult to understand how a plaintiff can allege that directors backdated options *without* simultaneously alleging that such directors *knew* that the options were being backdated. After all, any grant of options had to have been approved by the committee, and that committee can be reasonably expected to know the date of the options as well as the date on which they actually approve a grant." *Ryan*, 918 A.2d at 355 n.35 (emphasis in original).

Additionally, as indicated above, Code and Sledd also *received* allegedly backdated option grants. Though, as noted above, this fact alone is not enough to support an inference of scienter, "taken collectively" with other "known or assumed facts or statements," *Tellabs*, 127 S.Ct. at 2510, it strengthens the strong inference of scienter as to these members of the compensation committee. Finally, it should be noted that the Court does not hold that this

inference of scienter is "irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id.* (citation omitted). Under *Tellabs*, the inference need not be such. *Id.* The Court merely holds that the inference of scienter from the facts alleged is strong, cogent, and compelling. Plaintiffs will be put to their proofs on these allegations, but they are adequately pleaded pursuant to the PSLRA, such that the allegations survive a motion to dismiss.

Defendants point to, and the Court has independently considered, "competing inferences rationally drawn from the facts alleged," *id.*, and argue that any inference of scienter is not strong in light of competing non-culpable inferences from the facts alleged. They note that most of the option grants identified by Plaintiffs were made in January and February and argue that a stock such as PoolCorp that showed consistent growth over the relevant period of time would naturally tend to be priced lower in the beginning of the year than in the end of the year. Additionally, Defendants contend, PoolCorp's is a seasonal business, with stock prices tending to rise in the summer months and leveling off in the fall and winter. Accordingly, they maintain, it is no surprise–and not suggestive of fraudulent intent–that option grants in January and February would be followed by 30-day and one-year rises in the stock price.

In evaluating competing non-culpable inferences from the facts alleged, *Tellabs* does not require the Court to dismiss the complaint merely because there is a cogent inference pointing to an innocent explanation. Rather, a complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Here, the Court finds that the inference of scienter is at least as compelling as the opposing inference. To begin, Defendants' arguments are somewhat in tension, since if PoolCorp's stock price is at least partially cyclical (the latter argument) it also

cannot be said to move in an unbroken line pointing upwards (the former argument), and thus there is at least the opportunity to date options favorably based on swings in the stock price. Furthermore, there are allegedly backdated option grants in months later than January and February, and one as late as May. Nor is this is a case where there is a more compelling inference that the admittedly incorrectly dated option grants were an innocent bookkeeping error. *See*, *e.g.*, *Rudolph v. UTStarcom*, 560 F. Supp. 2d. 880, 890 (N.D. Cal. 2008) (equally compelling innocent explanation because 42 percent of incorrectly dated options were amended to dates where they were "at the money"). Rather, in this case, the grants that PoolCorp has admitted to dating incorrectly were *all* in favor of the Option Recipient Defendants, which cuts against the strength of any non-culpable inference. Thus, viewed against the Amended Complaint as a whole, the inference of scienter is at least as compelling as the opposing inference, given PoolCorp's admission to "certain issues" regarding the dating of option grants, its redating of those grants in such a way as to make it clear that the option recipients received an improper windfall, and its failure to explain how this did not constitute an admission of backdating. Given this admission–and PoolCorp's failure to reveal its methodology, uncover what caused the "issues" with option grants, or explain why it chose not to make demand on the option recipients, as mentioned above–the Court concludes that the inference of scienter is at least as compelling as any competing inference of nonfraudulent intent.

Plaintiffs have adequately alleged that the Individual Defendants who served on the compensation committee or stock option subcommittee during the relevant years had the requisite scienter to establish violations of §10(b) of the Securities Act and SEC Rule 10b-5. Accordingly, as to Code and Sledd, the motion is denied. Plaintiffs are granted leave for 20 days

from the date of this Order to file an Amended and Superseding Complaint, consistent with this

Order, to plead with particularity sufficient to satisfy the PSLRA that any other Individual

Defendant had the requisite scienter for a violation of §10(b) of the Securities Act and SEC Rule

10b-5.

### b. Section 14(a) Claims

Section 14(a) of the Securities Act makes it unlawful for one to use the mails "to solicit

or to permit the use of his name to solicit any proxy or consent or authorization in respect of any

security (other than an exempted security)" in contravention of SEC rules. 15 U.S.C. §78n.

Defendants incorporate their argument regarding scienter, pressed in response to the claims

under §10(b). They further argue that Plaintiffs have only alleged that Defendants *solicited*

proxies on the basis of a false or misleading statement within the meaning of §14(a)–as opposed

to *filing* proxy statements containing false statements–in one year, 1998. This argument does

reflect the allegations in the Amended Complaint, *see* Amended Complaint at ¶¶73-74, and the

Plaintiffs do not respond in their opposition. The Court pretermits any consideration of

Defendants' arguments concerning the Plaintiffs' failure to adequately plead scienter as to their

§14(a) claims in light of this Court's finding that the statute of repose bars any Securities Act

claims arising prior to November 17, 2001. *See infra* at §II(B)(1)(d). Accordingly, Defendants'

motion is granted as to Plaintiffs' claims pursuant to §14(a) of the Securities Act. The Court also

finds that leave to amend would, in this instance, be futile.

### c. Section 20(a) Claims

Section 20(a) makes those who control others who violate provisions of the Securities

Act jointly and severally liable "unless the controlling person acted in good faith and did not

directly or indirectly induce the act or acts constituting the violation or cause of action." 15

U.S.C. §78t(a). Thus, to prove a violation of §20(a) a plaintiff must prove a violation of the

Securities Act and that the controlling person had actual power over the controlled person and

induced or participated in the alleged violation. *Dennis v. General Imaging, Inc.*, 918 F.2d 496,

509 (5th Cir. 1990). Plaintiffs have adequately pleaded a violation of §10(b) of the Securities Act

and SEC Rule 10b-5 by Individual Defendants Code and Sledd. *See supra* at §II(B)(1)(a).

However, Plaintiffs have not pleaded with the requisite particularity that Sexton, Perez de la

Mesa, St. Romain, Hubbard, and the other Director Defendants controlled Code and Sledd and

induced or participated in the alleged violation. Plaintiffs are granted leave for 20 days from the

date of this Order to file an Amended and Superseding Complaint pleading with particularity

sufficient to satisfy the PSLRA that any Individual Defendant controlled another who violated

the Securities Act and induced or participated in the alleged violation.

### d. Statute of Repose

Defendants argue that Plaintiffs' claims are barred by the statute of repose, which states:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or
> contrivance in contravention of a regulatory requirement concerning the securities
> laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15
> U.S.C. 78c(a)(47)), may be brought not later than the earlier of
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

28 U.S.C. §1658(b). The federal claims in this case, asserting violations of §10(b) of the

Securities Act, as well as SEC Rule 10b-5; §14(a) of the Securities Act; and §20(a) of the

Securities Act, allege and involve fraud. Accordingly, Section 1658 applies to these claims.

A statute of repose is a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). Statutes subject to a statute of repose are not subject to equitable tolling. *Id.* at 361. In light of the statute's focus on the "violation," the Court first must decide what comprises the alleged violation. The primary focus of the claim appears to be on the backdating of options. To the extent that the claim is based upon the backdating itself, the period of repose starts on the date that the option grant was made. *Pedroli ex rel. Microtune, Inc. v. Bartek*, 564 F. Supp. 2d 683, 689 (E.D. Tex. 2008); *In re Marvell Technology Group, Ltd. Securities Litig.*, 2008 WL 4544439 (N.D. Cal. 2008); *In re Ditech Networks, Inc. Derivative Litig.*, 2007 WL 2070300 at *7 (N.D. Cal. 2007); *Affiliated Computer Services*, 540 F. Supp. 2d at 701. The Court rejects Plaintiffs' argument that the "continuing wrong" theory applies to toll limitations and repose until the last alleged misrepresentation was made, since "[s]uch a theory appears to approximate the effects of the fraudulent concealment doctrine of equitable tolling, a doctrine that does not apply" in the context of federal securities law. *Ditech Networks*, 2007 WL 2070300 at *8.

The instant suit was filed on November 17, 2006. Accordingly, any alleged violation of federal securities law that occurred prior to November 17, 2001, is barred by the statute of repose and Defendants' motion is granted to that extent.[10]

## 2. State Law Claims

---

[10] At present, prior to any amendment of the complaint, it appears that only one allegedly backdated option grant occurred after this date: the grant of approximately 273,000 shares on February 7, 2002, to nine recipients at $12.36 per share. This grant was later amended to reflect a measurement date of February 13, 2002, at $12.96 per share.

Defendants make a series of attacks on the various state law claims alleged by Plaintiffs, claiming that Plaintiffs have failed to state a claim for accounting, rescission, breach of fiduciary duty, unjust enrichment, constructive fraud, abuse of control, mismanagement, and corporate waste. Additionally, Defendants argue that all state law claims are barred by the Delaware statute of limitations.

### a. Failure to State a Claim

Plaintiffs allege claims for constructive fraud, abuse of control, gross mismanagement, accounting, and rescission. These claims are often considered a repackaging of claims for breach of fiduciary duty instead of being a separate tort. *See Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004) (applying Delaware law); *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1019 (N.D. Cal. 2007). Additionally, accounting and rescission are equitable remedies, not claims under the law. As to these claims, Defendants' motion to dismiss is granted.

In the context of a motion to dismiss for failure to state a claim under Rule 12(b)(6), the pleading standard does not reach so high a bar as Rule 23.1, either under the federal version or that of the Delaware Chancery Court. *Ryan*, 918 A.2d at 357. Accordingly, having rebutted the business judgment rule and established demand futility, Plaintiffs have adequately stated a claim for relief on the state law claims for breach of fiduciary duty, unjust enrichment, and corporate waste, and to this extent the motion is denied.

### b. Statute of Limitations

Defendants argue that all of Plaintiffs' state law claims are barred by the three-year Delaware statute of limitations. Under Delaware law, a claim for fraud accrues as soon as the

wrongful act occurs, even if the plaintiff is unaware of the harm. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) ("[A] cause of action 'accrues' . . . at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action."); *SmithKline Beecham Pharms. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000) ("[The] statute [of] . . . limitations period begins to run from the time the cause of action accrues. This is so even if the plaintiff is ignorant of the cause of action.") (internal citation omitted).

Plaintiffs argue, however, that the statute of limitations was equitably tolled. Under Delaware law, the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary. *See Weiss*, 948 A.2d at 451; *In re Tyson Foods*, 919 A.2d 563, 585 (Del. Ch. 2007). Underlying this doctrine is the idea that even an attentive and diligent investor may rely, in complete propriety, upon the good faith of fiduciaries. *Id.* This doctrine tolls the limitations period until an investor knew or had reason to know of the facts constituting the wrong. *In re MAXXAM, Inc. /Federated Dev. Shareholder Litig.*, 659 A.2d 760, 769 (Del. Ch. 1995).

If a plaintiff meets his burden of showing that the statute was tolled, relief extends only until plaintiff is on inquiry notice. That is to say, tolling ends where a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, his injury. *Ryan*, 918 A2d. at 359. On several recent occasions, the Delaware Chancery Court has held that adequately pleaded state law claims for backdating stock options are equitably tolled until such time as the board publicly disclosed that options had been backdated or otherwise gave indication of backdating, on the theory that a shareholder is "entitled to rely upon the competence and good faith of those

protecting [his] interests, including with regard to administration of [stock option] plans." *See*

*Weiss*, 948 A.2d at 452 (internal citation omitted); *see also Ryan*, 918 A.2d at 359; *Zoran Corp*.,

511 F. Supp. 2d at 1019 (applying Delaware law); *Kahn v. Seaboard Corp*., 625 A.2d 269, 276

(Del. Ch. 1993). In *Weiss*, the Delaware court also noted that it would be inappropriate to infer

that plaintiff was on inquiry notice of the claims "simply because [plaintiff] could have pieced

together the alleged practice of timing option grants from publicly available information," since

such an investigation is "beyond 'reasonable' diligence." *Weiss*, 948 A.2d at 452.

The Court agrees with the reasoning of the Delaware Chancery Court and concludes for

purposes of this motion that the statute of limitations on state law claims in this case was

equitably tolled until August 9, 2006, the date that PoolCorp publicly admitted to "certain

issues" regarding past option grants.[11] Accordingly, the claims were timely filed and Defendant's

motion to dismiss is denied to this extent. If they wish, Defendants may introduce evidence on a

motion for summary judgment or at trial tending to show that Plaintiffs were on inquiry notice

prior to that date.


## III. CONCLUSION

As set forth above, **IT IS HEREBY ORDERED** that:

(1) Defendants' motion to dismiss Plaintiffs' claim for disgorgement under §304 of the

---

[11] In the alternative, the statute was tolled until the public first became aware of the
practice of backdating upon the publication of the seminal article that revealed the widespread
use of the practice. *See* ERIC LIE, "On the Timing of Stock Option Awards," MGMT. SCIENCE at
802-12 (May 2005). Regardless, even if this date is used, the claims were timely filed.

Sarbanes-Oxley Act of 2002 is **GRANTED AS UNOPPOSED**;

(2) Defendants' motion to dismiss the Amended Complaint for failure to make pre-suit demand is **DENIED**;

(3) Defendants' motion to dismiss Plaintiffs' claims for violations of §10(b) of the Securities Act and SEC Rule 10b-5 is **DENIED** as to Individual Defendants Code and Sledd. Plaintiffs are granted leave for 20 days from the date of this Order to file an Amended and Superseding Complaint to plead with particularity sufficient to satisfy the PSLRA that any other Individual Defendant had the requisite scienter for a violation of §10(b) of the Securities Act and SEC Rule 10b-5;

(4) Defendants' motion to dismiss Plaintiffs' claims pursuant to §14(a) of the Securities Act for failure to state a claim is **GRANTED**;

(5) Plaintiffs are granted leave for 20 days from the date of this Order to file an Amended and Superseding Complaint to plead with particularity sufficient to satisfy the PSLRA that any other Individual Defendant controlled another who violated the Securities Act and induced or participated in the alleged violation within the meaning of §20(a) of the Securities Act;

(6) Defendants' motion to dismiss Plaintiffs' claims under the Securities Act as time-barred is **GRANTED** as to any alleged violation that occurred prior to November 17, 2001;

(7) Defendants' motion to dismiss Plaintiffs' state law claims for failure to state a claim is **GRANTED** as to the claims for constructive fraud, abuse of control, gross mismanagement, accounting, and rescission, and **DENIED** as to the claims for breach of fiduciary duty, unjust enrichment, and corporate waste; and

(8) Defendants' motion to dismiss Plaintiffs' state law claims as time-barred is **DENIED**.

New Orleans, Louisiana, this 11th day of February, 2009.

**KURT D. ENGELHARDT**
**United States District Judge**